UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAMS D. NICHOLS,<br><br>                          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                          Defendant. | Case No. 3:14-cv-05728-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

                    FACTUAL AND PROCEDURAL HISTORY

On January 1, 2011, plaintiff filed applications for disability insurance and SSI benefits, alleging in both applications that he became disabled beginning December 7, 2010. *See* Dkt. 9, Administrative Record ("AR") 22. These applications were denied upon initial administrative review on April 27, 2011, and on reconsideration on June 26, 2011. *See id.* A video hearing was held before an administrative law judge ("ALJ") on September 20, 2012, at which plaintiff,

ORDER - 1

represented by counsel, appeared and testified, as did a vocational expert. *See* AR 42-67.

In a decision dated January 22, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 19-41. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 10, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481. On September 18, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on January 23, 2015. *See* Dkt. 9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or alternatively for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity ("RFC"); (5) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy; and (6) in issuing a decision that is no longer supported by substantial evidence considering new evidence submitted to the Appeals Council. For the reasons set forth below, the Court agrees the ALJ erred in evaluating the medical evidence on the record – and thus in assessing plaintiff's RFC and in finding him to be capable of performing work – and therefore in determining him to be not disabled. Also for the reasons set forth below, however, while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (*quoting Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation

ORDER - 4

omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

On May 26, 2011, Tasmyn Bowes, Psy.D. completed a psychological/psychiatric evaluation of plaintiff, which included a Mental Status Examination ("MSE"). *See* AR 341-56. In her evaluation report, Dr. Bowes diagnosed plaintiff with a bipolar disorder (currently manic), an anxiety disorder NOS and a rule-out general anxiety disorder. AR 344. Dr. Bowes opined that plaintiff was markedly impaired in his ability to understand, remember and persist in tasks with complex instructions, perform routine tasks without undue supervision, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting with both public contact and limited public contact, and maintain appropriate behavior in a work setting. *See* AR 344-45.

With respect to Dr. Bowes' opinion, the ALJ found as follows:

ORDER - 5

> I accord little weight to Dr. Bowes' opinion because it is not fully consistent with her objective findings upon examination of the claimant nor is it consistent with the overall evidence of record. For example, in assessing that the claimant had marked limitations, Dr. Bowes relied upon the claimant's subjective reports of impulsive decision-making, history of poor judgment making, and reports that he has difficulty focusing. However, the claimant was able to engage in the interview and complete a three-step task (14F/4). The claimant's ability to engage with Dr. Bowes throughout the interview and complete a simple task is consistent with residual functional capacity described herein. Further, although Dr. Bowes also cited objective factors, including her observation that the claimant's pressured speech was "likely to seem strange to people" and said he had a somewhat odd presentation with body odor, the residual functional capacity described herein limits the claimant to occasional superficial contact with the public. Although the claimant displayed some difficulties with hygiene, he was cooperative during his examinations, indicating that he would be capable of occasional superficial contact with the public and no limits on his contact with supervisors or coworkers (3F, 4F, 14F). Further, Dr. Bowes noted that medication had improved the claimant's functioning in the past and he would likely improve with regular medication management and social support. She stated that his symptoms were typically treatable so long as the claimant followed through with treatment recommendations (14F/5). I note that the claimant's current treatment does not include individual therapy, and although he is on medication, his medication has changed little despite his reports that it is not completely effective. Moreover, Dr. Bowes['] opinion is not consistent with the objective findings from [the] claimant's examination with [James] Parker[.M.D.], which occurred less than two months before Dr. Bowes['] examination.

AR 31-32. Plaintiff argues the ALJ improperly discredited the opinion of Dr. Bowes. The Court agrees the ALJ erred here, but only in regard to the marked social functional limitations assessed by Dr. Bowes.

Although as noted above Dr. Bowes found plaintiff to be markedly limited in a number of other mental functional areas, Dr. Bowes' narrative comments strongly indicate she relied solely or in large part on plaintiff's self-reporting to so find. *See* AR 344-45; *Morgan*, 169 F.3d at 602 (medical opinion "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted'") (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989)). In regard to the plaintiff's ability to

ORDER - 6

communicate, perform effectively and maintain appropriate behavior in a work setting, though, Dr. Bowes either appeared to rely primarily on the results of the MSE she performed as well as her own observations of plaintiff or there is no clear indication that he relied on plaintiff's self-reports any more than he did on those more objective findings. *See* AR 345, 355; *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.") (internal citations omitted); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting diagnosis of depression is competent evidence); *Clester v. Apfel*, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (mental status examination results provide basis for psychiatric disorder diagnosis, just as results of physical examination support diagnosis of physical illness or injury).

The fact that plaintiff may have been able to engage in the interview performed by Dr. Bowes and complete a three-step task, furthermore, does not necessarily call into question the social functional limitations Dr. Bowes assessed. Indeed, a claimant may be able to perform a three-step task and yet still have problems relating to others in a work setting. Similarly, the mere fact that a claimant can remain engaged within the parameters of a psychological evaluation for a limited amount of time, does not necessarily mean he or she will be able to do so appropriately or consistently in a vocational setting for a full work day. Nor does the ALJ's restriction to "occasional" superficial contact with the public appear to fully take into account the severity of dysfunction indicated by a marked limitation in – i.e., "[v]ery significant interference" with (AR 344) – the ability to have such contact.

In addition, while it may be true that medication had improved plaintiff's functioning in the past and that Dr. Bowes felt it would improve his ability to gain and sustain employment with

ORDER - 7

regular monitoring and social support (*see* AR 345), the ALJ fails to show such improvement either in the past has or in the future would improve to the extent that would actually allow plaintiff to engage in full-time employment. Nor is it clear as to the reason why plaintiff's medication has not changed, despite it being not completely effective. That is, it may be due to factors other than plaintiff's lack of need or desire to make the change. In addition, Dr. Bowes estimated plaintiff could still remain limited to the extent she opined for up to a period 12 months, presumably even with regular medication management. *See id.*; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from impairment that has lasted or can be expected to last for continuous period of not less than twelve months). Dr. Bowes also premised improvement on the availability of "social support" (AR 345), whereas that support appears to be lacking (*see* AR 345).

   Lastly, although Dr. Parker's objective clinical findings may not be fully consistent with those of Dr. Bowes, this by itself is not a valid basis for discounting the latter's assessed mental functional limitations. It is not an abuse of discretion for an ALJ to disregard one medical source opinion for that of another, where the latter opinion is "based on 'independent clinical findings.'" *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)). In exercising that discretion, however, the ALJ still must provide specific and legitimate reasons for discounting the former opinion. *See id.* (ALJ properly exercised discretion in disregarding treating physician's opinion in favor of other physicians' opinions that were based on independent clinical findings, where ALJ found treating physician's opinion to be "untrustworthy because it was obtained solely for the purposes of the administrative hearing, varied from [that physician's] own treatment notes, and was worded ambiguously in an apparent attempt to assist [the claimant] in obtaining social security benefits"). Here, the ALJ offered no

ORDER - 8

reason for favoring Dr. Parker's findings over those of Dr. Bowes, other than the fact that they were inconsistent therewith. This was insufficient.

II.  The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case assessed found that plaintiff had the RFC to perform:

> **. . . less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following limitations. The claimant can perform jobs**

ORDER - 9

**that do not require him to climb ladders, ropes, or scaffolds. He can perform jobs that involve frequent overhead reaching bilaterally. He can perform jobs that allow him to avoid concentrated exposure to extreme cold or heat, noise, vibration, airborne pollutants, and hazards. Further, the claimant can perform simple, routine tasks with occasional superficial contact with the public and few, if any, changes in the work setting.**

AR 27 (emphasis in original). But because as discussed above the ALJ erred in discrediting the opinion of Dr. Bowes, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's capabilities. Accordingly, here too the ALJ erred.

III.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

ORDER - 10

functional capacity. *See* AR 61-64. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See id*. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 34-35.

Again, however, because the ALJ erred in evaluating the medical evidence in the record and thus in assessing the plaintiff's RFC, the hypothetical question cannot be said to completely and accurately describe all of plaintiff's capabilities. Therefore, the vocational expert's testimony in response thereto – and accordingly the ALJ's step five determination – also cannot be said to be supported by substantial evidence or free of error.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the

ORDER - 11

record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record, plaintiff's RFC and his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 5th day of August, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 12